Case No. 19-1105-XL, S.P. Holdings, L.P. v. NLRB, vu v. NLRB, S.P. Holdings v. NLRB, S.P. Holdings, L.P. v. NLRB, S.P. Holdings, L.P. v. NLRB, S.P. Holdings, L.P. v. NLRB, S.P. Holdings, L.P. v. NLRB, S.P. Holdings, L.P. v. NLRB, NLRB v. NLRB, D.T. source entry. Yeah, so is there a case that you would point to that took the analysis that you are seeking, and I take it as the TOTO case is the main one, but that was in a situation like this where the numerical benchmarks were met and the board went on and said, but if we look at the broader circumstances, we don't think that there is a substantial and representative segment. I don't see a case that does have the benchmarks met, but then looks at the factors to say, but actually that's not enough. I think TOTO is the other way around, right? It is the other way around, but Your Honor, what we would do is to ask you to take a look at some industries, which we cited in our brief. In some industries, interestingly enough, the labor board found that it would, the labor board determined to dismiss the petition, and it determined that the petition for a bargaining unit, that compliment, it found to be substantial, so that number was satisfied, but it found the compliment not to be representative, and our point here is certainly, admittedly, the employer did not intend to modify the job titles of the employees. For example, in the petition for a bargaining unit, there are guest room attendants. Those are the people who clean and maintain the hotel guest rooms, and the employer was adding 60 guest rooms, luxury villas, and suites. The work was going to be different by the guest room attendants working in those rooms, and what we would say is that very analysis for some industries, where the labor board there said that the compliment was not representative, that provides the basis to say, in this case, in the Palms case, the compliment was not representative. So, there was evidence of a prospective increase in the number of job classifications that you think the board erroneously overlooked, or lacked substantial evidence in its analysis of the job classifications? What we think is that the labor board, in simply looking at the numbers themselves, in its applicability section of the decision, and that is found at Joint Appendix 166-167, there the labor board relied exclusively upon numbers, and said, our standard is 30% of the unit, 50% of the job classifications, it's satisfied here. The labor board took no dive into the facts, although the regional director recited the facts that the director described, changes in the steakhouse, changes in the guest room, changes on the casino floor. The regional director did not then say, and if there are going to be these changes, we need to engage in the analysis that is required, which is the competing, the balancing of competing objectives, the avoidance of hard and fast rules, avoid the strict mathematical formula, and consider what these people will be doing. Compare the current situation to what it will look like post, after these changes are made. I just had this question, so on 166 and 167, the decision does say, applying the standards set forth above, and the standards set forth above include all the various considerations that you think should be taken into account. And so, if the decision had said, on the next page, as set forth above, based on the estimates provided in the record, the employer currently applies more than 30%, and then, for employees, then meets the 50% threshold for classifications, and then added a, just another reference to the considerations. Based on that, and the considerations enumerated above, I find that the employer employs a substantial and representative complement of employees. Then, your argument, you wouldn't have the same argument you have now, because those considerations would have been taken into account in the way that you think they should have been? Or am I not understanding your view? I am, well, Your Honor, interestingly enough, I read the phrase, as set forth above, to go to the paragraph immediately above, to, I did not understand that what the labor board was attempting to do was to take a shortcut and to wrap it into that analysis. But, regardless, what we maintain, Your Honor, is that the analysis that is required was not here. The labor board attempted to take a shortcut. The labor board did not take us through, it lists, in joint appendix 164, the various aspects of the renovation, improvement, and expansion of the operation. And the labor board did not tell us how those, how that, those changes related to the issues associated with the representative nature of the bargaining unit. I'm not sure I'm entirely following. So I do follow that you're saying it's the job classifications that are likely to become perhaps subdivided, or there would be an addition of some job classifications, and that the board did consider the intent to add five new job classifications, and talks about that. And there are some incumbents and some new employees to be hired into those. And then talks on 166 about how it's analyzing that under TOTO Industries, which is the case that you think provides the more nuanced analysis. So it did take into account the number of job classifications that are expected to be Most certainly. But that, our point here is that the incumbent positions, there was going to be a modification in substance and a modification of process in the work that they do. That is something that would be unavoidable when the employer spends $620 million to make this expansion, renovation, and improvement of its facility and its operation. But I understood that from reading the board's opinion, that you had so claimed and identified these additional jobs, and that the board ends up in looking at them saying, but we still think that the incumbent workers are sufficiently representative. It's not such a sea change in the nature of the workforce. And I'm just trying to tease out what is the kind of analysis that's missing that you would want and how we could reach it under this very deferential standard that we have. We understand that there is a tremendous deferential standard here. And what we submit, Your Honor, is that the labor board's decision is lacking in terms of reasoning. And most certainly, you cannot substitute your reasoning for the board in order to remedy its dearth. What we maintain is that the labor board failed to address the modifications in its operation and failed to consider, under the standards established in TOTO and the few other cases where this is discussed, how this topic should be addressed. All right. Well, why don't we hear from the board. Good morning. Good morning. May I please support Jessica Mendoza for responding and classifying the National Labor Relations Board. I will be sharing the last two minutes of my time with the intervener. The issue in this case is whether the board abuses discretion in directing an election when Palms Casino Resort, the company, employs 75% of its future employee, complementing 86% of expected classifications. In expanding unit cases such as this one, the board applies a substantial and representative test that balances the objective of, on one side, ensuring maximum employee participation in the selection of a bargaining agent, and on the other side, permitting employees to be represented as quickly as possible. In striking that balance, the board generally considers that if at least 30% of its future employee complement is employed in at least 50% of future job classifications, then it is appropriate to direct an election. Here, the company employs 75% of its future employee complement in 86% of its expected classifications, which by far exceeds the 30-50 guideline. Now I would like to move on to discuss the company's misinterpretation of the case total industries. First, I will dispute what the company said in its brief about the case total industries being a nine-factor test. The list that the board compiled from past cases in total industries is not prescriptive. It's not a list of requirements such a multi-factor test. Instead, it is a survey of what has been done in past cases. In any event, most of the items in this list are mainly quantitative. For example, items 1, 2, and 3, they compare the size of the present workforce with the size of the future workforce, and they also look at the employee complement eligible to vote. Also, numbers 7 and 8, those are job classifications currently filled and job classifications expected to fill. That's just another way of comparing the present job classification with future job classifications. All of these nine factors are factors that the board can consider when they are relevant. For example, in the case Clement that the company cited and we cited, in that case the board gave special consideration to the construction industry because it recognized the need to accommodate the fluctuating nature and unpredictable duration of construction activities. However, generally the board adheres to the 30-50 guideline. For example, in the case total industries, the case that describes the nine items, the board there based its decision to direct an election because the employee complement at that time was 60%. Similarly, three years after the case total industry, the board in Yellowstone decided to direct an election when the employee complement at that time was 38%. So this is the legal argument that the company makes, that the board must march through this list of nine items as if it was a checklist. However, the board has never done that before. Now the company also makes a factual argument. Specifically, it claims that the board failed to discuss the fact that the suspension was immediate. However, the record shows that the company will not have reached its full complement of employees until the third quarter of 2019. That's 17 months after the hearing date. Just to put it in perspective, the board in Yellowstone directed an election even when the employer's projected expansion was scheduled to be completed within the next two quarters. That's because the current workforce was 38%. So it stands to reason that if two quarters is not long enough of an expansion to warrant delaying an election, six quarters, as in this case, is not an immediate enough expansion to warrant delaying an election. In conclusion, the company fails to show that the board abuses its discretion by not addressing each of the nine factors compiling total industries. And it also fails to show how, even if all the factors were applied, the board's decision would change as the defining and substantial representative complement. So isn't that the gist of it? That if the employer had presented evidence, for example, that the number of job classifications requiring different skills from those that were currently filled or the number of job classifications that are expected to be filled, that there's something about the incoming employees that's qualitative about their anticipated work, you would have had to address that. In fact, and presumably did look at the proffered anticipated job classifications, the board would have had to look at that and say, is this a factor that's going to change the applicability of the representativeness? I'm asking this in a really unclear way. I apologize. But it seems to me that if there's evidence relevant to those factors, that it would make sense that the board would have to address them. And the question is, was there evidence relevant to those factors that would have militated in a different direction? Yes, Your Honor. There was evidence presented that there would be five new classifications, and that is what the board considers. So that is how we came up with the number 86%, because at the time of the hearing, the company employed 31 out of 36 future job classifications. There has been no evidence beyond those five new classifications of what other new classifications there would have been. So is it your position that if that numerical threshold is met and it's not even close, that the board does not also consider the type of skills in the anticipated job classifications? It doesn't need to do that in a case in which the benchmark numbers are clearly to the north of the – I mean, the actual numbers in the record are clearly to the north of the benchmarks? I will say that the board considers all of the factors that I presented that I entered into evidence. And here, if there is – I know the company says, you know, there has been factors that have been ignored. But besides the immediacy factor, I have not seen the company cite or point to any factor that has been ignored, that has been presented into evidence. I thought that Ms. Lipkin was saying that some of the jobs were going to be different because there would be suites or cottages rather than rooms or, you know, that some of the – And that's correct. And that's a factor that was considered what new classifications the employer will have. And if there is any additional job classifications, that has not been presented into evidence or it has not been pointed – it has not been indicated in the opening brief. And on immediacy, that – you made an argument about the temporal proximity. Yes, because that was an argument that was made in the opening brief about – in the opening brief, the company is saying this change was going to be immediate, so why not wait to hold the election? And what I was explaining is if two quarters, in the eyes of the board, if two quarters is not immediate enough of an expansion, then what makes you think, company, that six quarters is an immediate enough expansion to hold an election? Yeah, which makes – I mean, it makes sense. It's not reflected – that point is not reflected in the reasoning of the decision, right? That point is not reflected, but I wouldn't want to speculate why it was not reflected, but I would think maybe it was just so obvious that they didn't point it out. If there's no more questions, you're on the – I just want to be clear on your position about what the board needs to consider in what kind of case. If the threshold proportions of the employee complement currently versus what's anticipated, the number of job classifications currently and what's anticipated, if the current numbers are sufficiently robust, must the board also consider the nature of the new jobs, the time in which the onboarding is expected, or just does it even need to consider those other factors? I will say that the board has to consider everything that is relevant in each case. If, for example, the nature of the industry is relevant, then the board will discuss that, but there wasn't any argument here made as to why the nature of the industry, of the casino industry or the hotel industry, is different to any other industry. So in the four total industries, as I was saying before, presented these nine factors as a way to say, these are things that can be considered, but they have not – they don't need to be all considered in all cases, and, in fact, the board has never done that before, where they go one, two, three, four, and through all the nine factors and say, this one doesn't apply or this one does. So they're making some judgments about what is useful analytically among those factors, given the nature of the evidence in the case. That's correct, Your Honor. All right. We'll hear from Dr. Fuentes. Thank you, Your Honor. May it please the Court, Your Honors. Eric Myers from the Local Joint Executive Board of Las Vegas, consisting of the Culinary Workers Union and the Bartenders Union, Local 165. I'd like to try to address some of the questions that came out from the panel. First of all, there is no multi-factor test in any of the board decisions. There's a decision that the employer relies upon total industries. It was a regional director decision. The board denied review of the decision, and the regional director listed several factors that the board has considered in previous cases where those factors are relevant. Not that those factors are always considered, but where they are relevant. And, in fact, in total industries, having recited those factors, the regional director then looked at the numbers and said, based on these numbers, we think there is a substantial and representative complement of employees. The regional director in this case did no different than the regional director did in total industries, or no different than the board has done in any single case involving the expanding unit doctrine or the relocation doctrine or any of these instances where the substantial and representative issue comes up. I'd like to address the issue of new work, what the new work was going to require, because council made the representation that, quote, the work was going to be different, and that, quote, there's going to be new process and substances of work. I may not have quoted the second exactly. Let's be clear what the evidence said. There was no evidence of any new nature of work. The three, the five classifications that were going to be added, three of them were baker classifications, baker one, baker two, and baker three. One was a VIP steakhouse captain, and one was a VIP beverage hostess or server, beverage server. All of this work was of the very same kind that was already being performed, nothing new. The idea that there was going to be new luxury suites, sure, that may have increased the work for housekeeper and therefore militating in favor of an immediate representation election so that their interests could be represented during this critical period of renovation, but it implicated no new kinds of work processes, or at least there was no evidence at all of that in the record. An example in 10 seconds. If the employer had opened up, let's say, a new stadium for the Las Vegas Raiders in Las Vegas and operated the hotel and the stadium for the Raiders, we would be talking about potentially a very substantial different direction of the work. Can I ask you if in a case like this that the employees have elected to be represented and when the employer objects and there's a case that goes before the board and then they petition and bring that to us, in all this time the employees are not represented? What goes on in the interim? Unfortunately, and it's been, I've cited references of this very court of the deleterious effect of delay on employees' Section 7 rights. We've been engaged in the delay pattern, but what happens under board law is the following. From the date of the election, any unilateral change that occurs can be the subject of an unfair labor practice charge, and then when this long litigation process is over, the employer will be liable for unilateral changes that it has made from the date of the election until today. That is the, the board says that the employer acts at its peril in making unilateral changes during the time frame from the election day to the end of its litigation process. And what does that mean, it'll be liable for unilateral changes? Well, if, for example, it increases the cost of medical benefits without bargaining with the union, that would be an example that it has unilaterally imposed higher costs upon employees for medical co-premiums. So the union is in place during this period, and isn't represented? We are not in place, we are in the wings. Really, so not representing the employees during this time? We don't get to represent employees. During the pendency of the? We get to file new unfair labor practice charges saying, hey, you remember us, you're supposed to be recognizing us, you're not doing it. That's basically in the nature of preserving all those objections. We preserve our objections during the two years it takes for us to win an election by an overwhelming majority and the time that we finally get our status as bargaining representative. And then when you get your status, you have this huge inbox of disputes that have to be dealt with. Well, and to that point, there's often dissatisfaction because employees look at the union and say, where have you been? Well, we've been here, the D.C. Circuit. And so there must be some things like increasing costs of medical benefits that can be cashed out, but what about things that are not monetary and you say they're liable, like hours of work or something, scheduling? The standard board remedy is to post a notice on the wall that says we will not do these things without bargaining with the union. All right, thank you. Thank you. Thank you, Your Honors. I simply want to be clear. We're not suggesting that every one of the TOTO factors need be addressed in every case. What needs to happen, though, is that there must be thoughtful, reasoned analysis. And I took the opportunity to take another look at the regional director's decision in light of the questions from the panel. And we stand by where we have stood before, which is the regional director recites the relevant facts, he recites the law, and then he simply, summarily concludes, well, the 30-50 standard, it's satisfied. I don't want to interrupt. Keep going. Our point here is we disagree with the 30 standard, but yes, we acknowledge it's satisfied here. But in this instance, what we say is the representative compliment is not satisfied here. And our point is when the modifications that were identified in the hearing are present as they are here, this significant expansion improvement in operations, that most certainly, even if there are not changes in job titles, that there must be changes in job responsibilities. And the regional director failed to consider that. He failed to discuss that. And in that way, his decision is lacking. And that's our issue. So here's how you can help, Neiman, can you point to the factor that should have been considered and how the board should have considered it in a way that's supported by the record and it would have changed the outcome? It is accurate to say that total industries is not the end-all and be-all of the factors. What we would do is to take a look at the total factors and to say, if you take a look at the industry, because the total factors tell us that industry is one of the factors to be considered, and also take a look at new job classifications. And we're not saying that there were going to be new job classifications, because the employer certainly did not argue that. But we don't believe that the intention was to say form over substance. If you don't change a job title, if you don't create a new job title, that then you are precluded from making your point. So in terms of the nature of the industry, I take it that's one you're really leaning on, the nature of the industry? I think that's important here. What about the nature of the industry should have been acknowledged, and how would that acknowledgment change the analysis of the substantial and representative complement? I really want you to focus on that. Staying for an example of the third factor that the regional director noted in his list of things that the POMS was going to change, add premium ultra-luxury suites and approximately 60 new guest rooms, adding at least 36 new employees. What we're saying is those new employees are the same job title, the same guest room attendance that are in the petition for bargaining unit. But what the industry in Las Vegas of premium ultra-luxury suites, we understand is going to require different work and different process to achieve that work in the cleaning and the maintaining of the guest rooms. Like what? Higher grader sheets, higher grader towels, but there will still be cleaning rooms. We would maintain, Your Honor, that it is more than cleaning rooms. In an ultra-luxury suite, you may find... Polishing brass, polishing silver. There could be pinball machines. There is a basketball court. There are pool tables. There are many television sets. There are balconies. There are hot tubs on balconies looking out on the Las Vegas. Is there evidence of that in the record? No, Your Honor. And is there any explanation why those are considered different work even though the job title is identical? The employer's choice not to title that differently and create a different job description, right? That's correct, Your Honor, and we would note that the issue with respect to the prematurity of the filing was when the employer was in the throes of its expansion. The owner had only acquired this property two years earlier. It was investing this significant amount of money to modify the property, and all of the issues associated with who will be doing what had not been addressed. But most significantly, what was clear was that there were going to be significant changes in the operation and in the facility, and these employees were going to be doing the work associated with that. But you just acknowledged it wasn't part of the record that they're going to be cleaning basketball courts, cleaning hot tubs. I mean, they're cleaning tubs. They are doing different work, and it will be different. But you didn't tell the board, apparently not you, but there isn't evidence in the record about what the new jobs are. There was evidence that these modifications were going to be made, and what that means is that a conclusion must be reached as to whether the labor board is going to consider all of the factors. And the employer didn't know. That's what you just acknowledged. He didn't know. That's correct. So what is the board supposed to do with all these existing employees? What the board should do, as the board has told us, it must balance competing factors. One factor is the need to have an election as soon as possible to recognize the rights of the employees, but at the same time, on the flip side, not to have an election in such a manner that employees are left out of the process. But you acknowledged to Judge Pillard, didn't you, essentially that there was no factor that the board didn't consider where there was evidence in the record that would have changed the outcome. What the labor board failed to consider was that the current production for the palms was going to vary from what the production would be in the future, and that the ultimate type of jobs, what would be ultimately done by those workers in the future, was different than the work that was done by those workers at the time of the hearing. All right. Anything further? No, thank you, Your Honor. Thank you. We'll take the case under advice.
judges: Rogers, Srinivasan, Pillard